BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
 fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
 achang@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiff Eljon Lako*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELJON LAKO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LOANDEPOT, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Eljon Lako ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), submits this complaint against defendant loanDepot, Inc. ("loanDepot" or "Defendant") for, among other things, negligence, negligence *per se*, breach of contract, breach of implied contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, invasion of privacy violations, unjust enrichment, deceit by concealment, and violations of the California Consumer Privacy Act ("CCPA"), the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), the California Customer Records Act ("CCRA"), the Florida Deceptive and Unfair Trade Practices Act, the California Unfair Competition Law ("UCL"), and the California Consumers Legal Remedies Act ("CLRA"), as well as declaratory and injunctive relief.  In support of these claims, Plaintiff alleges the following (a) upon personal knowledge with respect to the matters pertaining to himself; and (b) upon information and belief with respect to all other matters, based upon, among other things, the investigations undertaken by Plaintiff's counsel. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This is a class action lawsuit seeking damages and declaratory and injunctive relief on behalf of Plaintiff and other customers of Defendant loanDepot.

2.    LoanDepot is a corporation with its principal executive offices located at 6561 Irvine Center Drive, Irvine, California 92618.  LoanDepot's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "LDI."  LoanDepot services loans worth more than $140 billion and has about 4,500 employees. The company reported third-quarter

1

2023 revenue of $266 million and EBITDA-adjusted profit of $18 million.

3.      As more specifically described below, this case is brought on behalf of all persons in the United States who have been adversely affected by the data breach announced by loanDepot, Inc. on January 8, 2024, including all persons who were sent notice by loanDepot that their personal information was compromised as a result of the data breach (the "Class").

4.      LoanDepot has admitted that approximately 16.6 million of its customers had their sensitive personal information stolen in a cyberattack in early January 2024.

5.      LoanDepot first disclosed the data breach on January 8, 2024 via a Form 8-K filed with the SEC, in which it stated that it had "recently identified a cybersecurity incident affecting certain of the Company's systems" and that "the Company has determined that the unauthorized third party activity included access to certain Company systems and the encryption of data. In response, the Company shut down certain systems and continues to implement measures to secure its business operations, bring systems back online and respond to the incident."[1]

6.      But when it was contacted by reporters about the cyberattack, loanDepot spokesperson Jonathan Fine refused to say what kind of sensitive and personal customer data was stolen. *See* Zack Whittaker, "LoanDepot says 16.6M customers had 'sensitive personal' information stolen in cyberattack," TECHCRUNCH, Jan. 22, 2024.

7.      LoanDepot has yet to disclose whether or not the attackers exfiltrated databases or files pertaining to employees or mortgage holders, or whether it is the recipient of a ransom demand.

---

[1]      *See* Form 8-K, Jan. 8, 2024, available at https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/1831631/000183163124000004/ldi-20240104.htm, last visited Jan. 29, 2024.

8.     As a result of the data breach and cyberattack, many of loanDepot's online services became inaccessible to Plaintiff and the Class. Despite the promises from loanDepot chief executive Frank Martell that the company was allegedly making progress in quickly bringing the Company's systems back online, the lack of access to loanDepot's services affecting customers persisted into the second week after the incident, with customers reporting that they were unable to make payments or access their online accounts.

9.     One customer tweeted to loanDepot that: "I can't pay my mortgage because of your site updating. Can't even call your number. It's been a complete nightmare."[2]

10.     The Company's customer service portal, "mellohomes.com" website, HELOC customer portal, and "myloandepot" customer portal were all down and inaccessible until January 18, 2024.

11.     The Company established a landing page on its website where customers supposedly could obtain more information -- https://loandepot.cyberincidentupdate.com/. But that page had no more information available than the Company's bare-bones disclosures in its January 8, 2024 Form 8-K filed with the SEC.

12.     After keeping its customers in the dark for two weeks, on January 22, 2024 the Company issued a press release providing an update regarding this cybersecurity incident.  The press release stated:

01/22/2024

IRVINE, Calif.--(BUSINESS WIRE) -- loanDepot, Inc. ("LDI" or "Company") (NYSE: LDI), a leading provider of home lending

---

[2] *See* Matthew Schwartz, "LoanDepot Hit by Ransomware Attack; Multiple Systems Offline," Bank Info Security, Jan. 8, 2024, available at https://www.bankinfosecurity.com/loandepot-hit-by-ransomware-attack-multiple-systems-offline-a-24053, last visited Jan. 29, 2024.

solutions, today provided an update on the cyber incident it disclosed on January 8, 2024.

The Company has been working diligently with outside forensics and security experts to investigate the incident and restore normal operations as quickly as possible. The Company has made significant progress in restoring our loan origination and loan servicing systems, including our MyloanDepot and Servicing customer portals.

Although its investigation is ongoing, ***the Company has determined that an unauthorized third party gained access to sensitive personal information of approximately 16.6 million individuals in its systems***. The Company will notify these individuals and offer credit monitoring and identity protection services at no cost to them.

13.     The January 22, 2024 "update" provided little new information, other than telling customers they were eligible for free credit monitoring services.

14.     LoanDepot appears to have been grossly negligent in failing to maintain its systems in such a manner as to safeguard the sensitive financial information collected from Plaintiff and the Class in connection with the origination and servicing of mortgages and other financial products.

15.     LoanDepot experienced a prior data breach in August 2022 that resulted in the disclosure of social security numbers, and which it failed to disclose until May 2023.  On May 8, 2023, loanDepot notified customers that their information had been stolen in an attack that occurred the previous August, according to a breach notification filed with the Maine Attorney General's office.

16.     The notice that loanDepot sent to customers in May 2023 stated that

4

"On August 3, 2022, we observed anomalous activity on our IT network. We promptly launched an investigation and took a series of immediate steps designed to remediate the issue."[3]   The letter to customers also stated that "loanDepot identified brief unauthorized access" to its databases and that "it is possible that the unauthorized actor could have accessed documents containing your personal information, as described below."   LoanDepot's filing with the Maine Attorney General's office described the information that was compromised as: "Name or other personal identifier in combination with: Social Security Number."[4]

17.     Despite the significance of the August 2022 data breach, loanDepot failed to invest the resources required to improve its data security, thus continuing to expose its customers to the significant risk of another data breach.   Thus, loanDepot's subsequent admission on January 8, 2024 that its systems had yet again been hacked was foreseeable and caused by loanDepot's negligence.

18.     Due to Defendant loanDepot's unlawful conduct and the ensuing cyberattack and data breach, Plaintiff and the Class have been damaged.

## II.     PARTIES

19.     Plaintiff Eljon Lako is a citizen of the state of Florida. Plaintiff is a customer of loanDepot.   Plaintiff currently has a mortgage originated and serviced by loanDepot, as a result of which loanDepot has possession of Plaintiff's personal and sensitive financial information, including his social security number, home address, phone number, email address, and information about Plaintiff's salary, income, assets, bank account information,

---

[3] The letter is available from the Maine Attorney General's website, at https://apps.web.maine.gov/online/aeviewer/ME/40/60385809-5ea7-44e0-93a5-4ee98fb42e1e.shtml , last visited Jan. 29, 2024.

[4]     *See*   https://apps.web.maine.gov/online/aeviewer/ME/40/60385809-5ea7-44e0-93a5-4ee98fb42e1e.shtml , last visited Jan. 29, 2024.

and other personal information. As a result of Defendant's actions, Plaintiff has been injured and has suffered damages and economic losses.

20.    Defendant loanDepot, Inc. is a Delaware corporation with its principal place of business located at 6561 Irvine Center Drive, Irvine, California 92618. LoanDepot sells mortgage and non-mortgage lending products. LoanDepot is one of the largest mortgage lenders in the country.

## III.    <u>JURISDICTION AND VENUE</u>

21.    This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and members of the Class are citizens of different states than loanDepot.

22.    This Court has personal jurisdiction over Defendant because it maintains headquarters in Irvine, California.  Defendant regularly conducts business in this District.

23.    Venue is proper in this Court under 28 U.S.C. § 1391 because (a) loanDepot transacts business in this District; (b) substantial events and transactions giving rise to this action took place in this District; and (c) many members of the Class reside in this District.

## IV.    <u>CLASS ACTION ALLEGATIONS</u>

24.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed class (the "Class"), defined as:

> All persons in the United States who have been adversely affected by the data breach announced by loanDepot, Inc. on January 8, 2024, including all persons who were sent notice by loanDepot that their personal information was compromised as a result of the data breach.

25.    Excluded from the Class are any entities, including loanDepot, in which loanDepot or its subsidiaries or affiliates have a controlling interest, loanDepot's officers, agents and employees, the judicial officer to whom this action is assigned and any member of the Court's staff and immediate families, as well as claims for personal injury, wrongful death, and emotional distress.

26.    **Numerosity Under Rule 23(a)(1).** The members of the Class are so numerous that joinder of all members would be impracticable. Based on information and belief, Plaintiff alleges that the Class includes millions of members.  LoanDepot's January 8, 2024 notice regarding the data breach stated that "the Company has determined that an unauthorized third party gained access to sensitive personal information of **approximately 16.6 million individuals in its systems**."

27.    **Commonality and Predominance Under Rule 23(a)(2) and 23(b)(3)**. This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including:

(a)    whether loanDepot shared the personal information of Plaintiff and other Class members with third parties without their authorization or consent;

(b)    whether loanDepot violated Plaintiff's and Class members' privacy rights;

(c)    whether loanDepot intruded upon Plaintiff's and the Class members' seclusion;

(d)    whether loanDepot acted negligently;

(e)    whether Plaintiff and other Class members formed implied contracts with loanDepot;

(f)    whether loanDepot breached implied contracts with Plaintiff

and the Class members and breached the implied covenant of good faith and fair dealing;

(g)     whether loanDepot violated the CCPA;

(h)     whether loanDepot violated the Florida Deceptive and Unfair Trade Practices Act;

(i)     whether loanDepot violated the California UCL;

(j)     whether Plaintiff and the Class members were harmed as a result of loanDepot's conduct, including increased risk of identity theft and loss of value of personal information;

(k)     whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages or any other monetary relief; and

(l)     whether Plaintiff and the Class members are entitled to declaratory and equitable relief.

28.     Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by loanDepot's actionable conduct. LoanDepot's conduct that gave rise to Plaintiff's claims is the same for all members of the Class.

29.     LoanDepot engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and on behalf of the other Class members. Similar or identical statutory and common-law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

30.     **Typicality Under Rule 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, (a) Plaintiff and the other Class members provided personal information to loanDepot;

and (b) in its uniform misconduct alleged herein, loanDepot shared the personal information of Plaintiff and other Class members without their authorization or consent. Plaintiff and other Class members are advancing the same claims that are based on the same legal theories. There are no defenses that are unique to Plaintiff.

31. **Adequacy of Representation Under Rule 23(a)(4).** Plaintiff is an adequate representative of the Class because (a) his interests do not conflict with the interests of the other Class members he seeks to represent; (b) he has retained counsel competent and experienced in complex class action litigation, including data-privacy litigation; (c) he will prosecute this action vigorously; and (d) he has no interests that are contrary to or in conflict with the interests of other Class members.

32. **Superiority Under Rule 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There should be no difficulty in managing this action as a class action.

33. Class certification is also appropriate under Rule 23(b)(2) because loanDepot has acted or has refused to act on grounds generally applicable to the Class, so that corresponding declaratory relief is appropriate to the Class as a whole.

34. California law applies to the claims asserted in this complaint because:

- loanDepot is headquartered in California;

- all loanDepot's key decisions and a substantial part of its

operations emanate from California;

- a substantial number of the Class members reside in California;

- California has a strong interest in preventing corporations headquartered in the state from engaging in unfair, unlawful, and deceptive business practices; and

- California has a strong interest in providing redress for its citizens for loanDepot's illegal conduct.

## V.    <u>SUBSTANTIVE ALLEGATIONS</u>

**A.**    **LoanDepot's Business Operations and Collection and Storage of Consumers' Sensitive Personal Information**

35.    LoanDepot's operations are focused on the origination and servicing of mortgages and other financial products.

36.    LoanDepot, Inc. was incorporated in Delaware on November 6, 2020 to facilitate the initial public offering ("IPO") of its Class A common stock and related transactions in order to carry on the business of LD Holdings Group LLC ("LD Holdings") and its consolidated subsidiaries. LoanDepot, Inc.'s common stock began trading on the New York Stock Exchange on February 11, 2021 under the ticker symbol "LDI."

37.    The Company described its business more particularly in its most recent Form 10-Q quarterly report as follows: "The Company engages in the originating, financing, selling, and servicing of residential mortgage loans, and engages in title, escrow, and settlement services for mortgage loan transactions. The Company derives income primarily from gains on the origination and sale of loans to investors, income from loan servicing, and fees charged for settlement services related to the origination and sale of loans."[5]

38.    As part of its business, loanDepot routinely collects sensitive

---

[5] *See* loanDepot Form 10-Q, filed Nov. 9, 2023, at p. 7.

personal information from consumers as part of providing its services and products. This information includes, as acknowledged in loanDepot's Privacy Policy:

The information we collect depends on the context in which you provide it, and may include:

- Identifiers such as full name, alias, unique personal identifier, online identifier, Internet Protocol address, email address, postal address, phone number
- Demographic information such as race, ethnicity, age, and gender that may be required gathered in accordance with federal or state requirements
- Sensitive personal information, which may include social security, driver's license, state identification card, government identification card, or passport number; account log-in, financial account number in combination with any required security or access code, password, or credentials allowing access to the account
- Home ownership status, location, and approximate value of your property, as well as photos of your property
- Loan, real estate, or financial or credit products or services you have used in the past
- Financial information, such as income, assets, savings, investments, liabilities, and net worth
- Bank account information
- Employment or professional history or status and education information
- Insurance information
- Other profile data, including your interests and preferences
- Information for fraud detection and prevention (including your photo)
- Any other information you may choose to provide

39. LoanDepot's Privacy Policy further states:

LoanDepot® values your patronage and protecting your personal information is a priority. LoanDepot believes in protecting the confidentiality and security of the information we collect about you as a customer, potential customer, former customer, job applicant, or employee. We have adopted the following policies and procedures to safeguard the personal information about you in our possession.[6]

---

[6] *See* LoanDepot Privacy Policy, available at https://www.loandepot.com/privacypolicy , last visited Jan. 29, 2024.

11

40.    The policies and procedures loanDepot represented it had in place to protect consumers' personal information are as follows, according to the Privacy Policy:

**Safeguarding Personally Identifiable Information**

- We have adopted policies and procedures designed to protect your personally identifiable information from unauthorized use or disclosure.
- We have implemented physical, electronic, and procedural safeguards to maintain confidentiality and integrity of the personal information in our possession and to guard against unauthorized access. These include among other things, procedures for controlling access to your files, building security programs and information technology security measures such as the use of passwords, firewalls, virus prevention and use detection software.
- We continue to assess new technology as it becomes available and to upgrade our physical and electronic security systems as appropriate.
- Our policy is to permit employees to access your personal information only if they have a business purpose for using such information, such as administering, providing or developing our products or services.
- Our policy, which governs the conduct of all of our employees, requires all employees to safeguard personally identifiable information about the consumers and customers we serve or have served in the past.

**LoanDepot Security Policy**

LoanDepot takes steps to safeguard your personal and sensitive information through industry standard physical, electronic, and operational policies and practices. All data that is considered highly confidential data can only be read or written through defined service access points, the use of which is password-protected. The physical security of the data is achieved through a combination of network firewalls and servers with tested operating systems, all housed in a secure facility. Access to the system, both physical and electronic, is controlled and sanctioned by a high-ranking manager.

41.    LoanDepot's knowledge of the responsibility and need to safeguard consumers' personally identifiable information is amply demonstrated by its Privacy Policy, in which it represents that it will do so and that it has "adopted policies and procedures designed to protect your personally identifiable information from unauthorized use or disclosure."

**B.    LoanDepot Knew That Its Computer Systems Were Outdated and in Need of Substantial Improvement Because It Experienced a Similar Data Breach in 2022**

42.    LoanDepot appears to have been grossly negligent in failing to maintain its systems in such a manner as to safeguard the sensitive financial information collected from Plaintiff and the Class in connection with the origination and servicing of mortgages and other financial products.

43.    In August 2022, loanDepot experienced a prior data breach that resulted in the disclosure of its customers' social security numbers. Furthermore, it failed to disclose the data breach until May 2023.

44.    In light of the strong laws mandating companies to immediately report data breaches, loanDepot's failure to report the August 2022 data breach for nine months suggests that loanDepot's systems were so deficient and inadequate that loanDepot did not even know it had been hacked.

45.    On May 8, 2023, loanDepot notified customers that their information had been stolen in an attack that occurred nine months earlier, in August 2022, according to a belated notification filed with the Maine Attorney General's office.

46.    The notice that loanDepot sent to customers in May 2023 stated that "On August 3, 2022, we observed anomalous activity on our IT network. We promptly launched an investigation and took a series of immediate steps

designed to remediate the issue."[7]  The letter to customers also stated that
"loanDepot identified brief unauthorized access" to its databases and that "it
is possible that the unauthorized actor could have accessed documents
containing your personal information, as described below."  LoanDepot's
filing with the Maine Attorney General's office described the information that
was compromised as: "Name or other personal identifier in combination with:
Social Security Number."[8]

47.    Despite the significance of the August 2022 data breach, loanDepot
failed to invest resources required to improve its data security, thus continuing
to expose its customers to the significant risk of another data breach.

48.    Moreover, loanDepot was on notice of many cyberattacks in its
industry leading up to the January 2024 data breach.  In October 2023, in
response to the increasing prevalence of cyberattacks in the mortgage and real
estate industry, the FTC finalized an amendment to the Safeguards Rule that
requires mortgage originators like loanDepot to report certain data breaches
and other security events affecting 500 or more customers to the FTC as soon
as possible and no later than 30 days.[9]

49.    In November 2023, Mr. Cooper (formerly known as Nationstar),
one of America's largest nonbank mortgage loan servicers, suffered a
cyberattack that disrupted loan payments and other transactions for millions

---

[7] The letter is available from the Maine Attorney General's website, at
https://apps.web.maine.gov/online/aeviewer/ME/40/60385809-5ea7-44e0-
93a5-4ee98fb42e1e.shtml , last visited Jan. 29, 2024.

[8] *See*   https://apps.web.maine.gov/online/aeviewer/ME/40/60385809-5ea7-
44e0-93a5-4ee98fb42e1e.shtml , last visited Jan. 29, 2024.

[9] *See* FTC bulletin, "FTC Amends Safeguards Rule to Require Non-Banking
Financial Institutions to Report Data Security Breaches," Oct. 27, 2023,
available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-
amends-safeguards-rule-require-non-banking-financial-institutions-report-
data-security-breaches, last visited Jan. 29, 2024.

of customers.[10]

50.    The material deficiencies in loanDepot's computer systems and the lack of adequate internal controls at loanDepot over the safeguarding of consumer personally identifiable information was known to Defendant. LoanDepot's failure to rectify such deficiencies resulted in the subsequent 2024 data breach and harm to Plaintiff and the Class.

**C.    The January 8, 2024 Announcement of Yet Another Significant Data Breach at LoanDepot**

51.    On January 8, 2024, loanDepot filed a Form 8-K with the SEC disclosing that there had been a data breach and that a third party had gained access to the sensitive personal information of 16.6 million of its customers.

52.    LoanDepot's January 8, 2024 Form 8-K stated that it had "recently identified a cybersecurity incident affecting certain of the Company's systems" and that "the Company has determined that the unauthorized third party activity included access to certain Company systems and the encryption of data. In response, the Company shut down certain systems and continues to implement measures to secure its business operations, bring systems back online and respond to the incident."[11]

53.    But when it was contacted by reporters about the cyberattack, loanDepot spokesperson Jonathan Fine refused to say what kind of sensitive and personal customer data was stolen. *See* Zack Whittaker, "LoanDepot says 16.6M customers had 'sensitive personal' information stolen in cyberattack," TECHCRUNCH, Jan. 22, 2024.

54.    LoanDepot has yet to disclose whether or not the attackers

---

[10] *See* Stacey Cowley, "Cyberattack Disrupts Mortgage Payments for Millions of Mr. Cooper Customers," THE NEW YORK TIMES, Nov. 7, 2023.

[11] *See* Form 8-K, Jan. 8, 2024, available at https://www.sec.gov/ixviewer/ix.html?doc=/Archives/edgar/data/1831631/000183163124000004/ldi-20240104.htm, last visited Jan. 29, 2024.

exfiltrated databases or files pertaining to employees or mortgage holders, or whether it is the recipient of a ransom demand.

55.    As a result of the data breach and cyberattack, many of loanDepot's online services became inaccessible to Plaintiff and the Class. Despite the promises from loanDepot chief executive Frank Martell that the Company was allegedly making progress in quickly bringing the Company's systems back online, the lack of access to loanDepot's services affecting customers persisted into the second week after the incident, with customers reporting that they were unable to make payments or access their online accounts.

56.    One customer tweeted to loanDepot that: "I can't pay my mortgage because of your site updating. Can't even call your number. It's been a complete nightmare."[12]

57.    The Company's customer service portal, "mellohomes.com" website, HELOC customer portal, and "myloandepot" customer portal were all down and inaccessible until January 18, 2024.

58.    The Company established a landing page on its website where customers    supposedly    could    obtain    more    information    -- https://loandepot.cyberincidentupdate.com/. But that page had no more information available than the Company's bare-bones disclosures in its January 8, 2024 Form 8-K filed with the SEC.

59.    After keeping its customers in the dark for two weeks, on January 22, 2024 the Company issued a press release providing an update regarding this cybersecurity incident.  The press release stated:

---

[12] *See* Matthew Schwartz, "LoanDepot Hit by Ransomware Attack; Multiple Systems    Offline,"    BANK INFO SECURITY,    Jan.    8,    2024,    available    at https://www.bankinfosecurity.com/loandepot-hit-by-ransomware-attack-multiple-systems-offline-a-24053, last visited Jan. 29, 2024.

01/22/2024

IRVINE, Calif.--(BUSINESS WIRE) -- loanDepot, Inc. ("LDI" or "Company") (NYSE: LDI), a leading provider of home lending solutions, today provided an update on the cyber incident it disclosed on January 8, 2024.

The Company has been working diligently with outside forensics and security experts to investigate the incident and restore normal operations as quickly as possible. The Company has made significant progress in restoring our loan origination and loan servicing systems, including our MyloanDepot and Servicing customer portals.

Although its investigation is ongoing, the Company has determined that an unauthorized third party gained access to sensitive personal information of approximately 16.6 million individuals in its systems. The Company will notify these individuals and offer credit monitoring and identity protection services at no cost to them.

60.    The January 22, 2024 "update" provided little new information, other than telling customers they were eligible for free credit monitoring services.

61.    The data breach has caused significant harm to Plaintiff and the Class.  The type of information obtained by the hackers – names, dates of birth, telephone numbers, email addresses, and social security numbers – is extremely valuable to hackers and identity thieves because it allows them to sell the information on the dark web.  It also is sufficient to permit them to hack other accounts owned by consumers by guessing or hacking passwords to such other accounts.

62.    Plaintiff's credit score and personally identifiable information are also at significant risk. The personally identifiable information compromised

in the data breach can be used by criminals to engage in identity theft, such as opening new credit card accounts in Plaintiff's name. Even if a new account is not opened, a consumer's credit score can be damaged just through a credit inquiry.

63.    One article noted that similar information from a hack at Trello is already for sale on the dark web and that loanDepot customers are at risk of the same and of phishing scams:

> Given that loanDepot stores sensitive customer financial and bank account information, **those affected by this breach should know they might be the target of phishing attacks and identity theft attempts**.[13]

64.    One industry commentator explained why data breaches at mortgage companies are so attractive to hackers and so damaging to consumers:

> **Why are mortgage companies so attractive to hackers?**
>
> *Mortgage service providers collect extremely sensitive information about their customers and applicants. Hackers cannot only find all the pieces of the puzzle needed to commit fraud but can also see additional details about potential victims that are not easily available.*
>
> Such info includes copies of *tax returns, banking info, and detailed information about workplaces, salary*, and even the type of car people drive. ***Such data points help hackers target victims in the most lucrative way possible.***
>
> Victims are advised to be vigilant, keep an eye on credit reports, and always be protected with high-quality antivirus software.[14]

---

[13] *See* Ben Lovejoy, "Trello data breach of 15M accounts; LoanDepot 16M customers," 9TO5MAC, Jan. 23, 2024, available at https://9to5mac.com/2024/01/23/trello-data-breach/, last visited Jan. 29, 2024.

[14] *See* Panda Media Center, "Cybercriminals Appear to Have Found a New Industry to Target – Mortgage Companies," Jan. 16, 2024, available at

65.     The Data Breach has severely harmed Plaintiff and the Class and has caused their personal information to be disclosed to unauthorized persons.

66.     LoanDepot knew or should have known that its computer systems are deficient and unsecure and do not meet industry best practices for safeguarding highly sensitive customer personal information. On information and belief, loanDepot failed to make necessary improvements in its computer systems, privacy policies, and its IT systems and servers, exposing its customers' personal information to the risk of theft, identity theft, and fraud.

67.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

68.     Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[15]

69.     There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[16]

---

https://www.pandasecurity.com/en/mediacenter/mortgage-companies-cyber-attacks/, last visited Jan. 29, 2024.

[15] Janice Y. Tsai *et al.*, *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[16] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

70.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' personal information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

71.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[17]

72.     It is within this context that Plaintiff and all other Class members must now live with the knowledge that their personal information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

## VI.    CAUSES OF ACTION

### COUNT I

**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**FLA. STAT. §§ 501.201,** *et seq.*

73.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

74.     Plaintiff is a "consumer" as defined by Fla. Stat. § 501.203.

75.     Defendant loanDepot advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

76.     Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. §

---

[17] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

501.204(1), including:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's Personally Identifiable Information ("PII" or "Personal Information"), which was a direct and proximate cause of the Data Breach;

    b. Failing to identify and remediate foreseeable security and privacy risks and sufficiently improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's PII, including duties imposed by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and Florida's data security statute, Fla. Stat. § 501.171(2), which was a direct and proximate cause of the Data Breach;

    d. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's PII, including by implementing and maintaining reasonable security measures;

    e. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, Fla. Stat. § 501.171(2);

    f. Omitting, suppressing, and concealing the material fact that it did not properly secure Plaintiff's PII; and

    g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's PII, including duties

imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, Fla. Stat. § 501.171(2).

77.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of loanDepot's data security and ability to protect the confidentiality of consumers' PII.

78.    Had loanDepot disclosed to Plaintiff that its data systems were not secure and, thus, were vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendant was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff. Defendant accepted the responsibility of protecting the data but kept the inadequate state of its security controls secret from the public. Accordingly, Plaintiff acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which he could not have discovered.

79.    As a direct and proximate result of loanDepot's unconscionable, unfair, and deceptive acts and practices, Plaintiff has suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of his PII; overpayment for Defendant's services; loss of the value of access to Plaintiff's PII; and the value of identity protection services made necessary by the Data Breach.

80.    Plaintiff seeks all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and

injunctive relief; reasonable attorneys' fees and costs under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT II

### Violations of the Comprehensive Computer Data Access and Fraud Act
### CAL. PENAL CODE § 502

81.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

82.    The California Legislature enacted the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 ("CDAFA") to "expand the degree of protection afforded. . . from tampering, interference, damage, and unauthorized access to (including the extraction of data from) lawfully created computer data and computer systems," finding and declaring that "the proliferation of computer technology has resulted in a concomitant proliferation of . . . forms of unauthorized access to computers, computer systems, and computer data," and that "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals. . . ." CAL. PENAL CODE § 502(a).

83.    Plaintiff's devices on which he accessed his mortgage account at loanDepot, including his computers, smart phones, and tablets constitute "computers, computer systems, and/or computer networks" within the meaning of the CDAFA.

84.    Defendant violated § 502(c)(1)(B) of the CDAFA by knowingly accessing and without permission accessing Plaintiff's and Class members' devices in order to obtain their personal information, including their device and location data, and in order for Defendant to share that data with third parties, in violation of users' reasonable expectations of privacy in their devices and data.

85.    Defendant violated Cal. Penal Code § 502(c)(2) by knowingly and without permission accessing, taking and using Plaintiff's and the Class Members' personally identifiable information.

86.    The computers and mobile devices that Plaintiff and Class members used to access and service their mortgage accounts with loanDepot all have and operate "computer services" within the meaning of the CDAFA. Defendant violated §§ 502(c)(3) and (7) of the CDAFA by knowingly and without permission accessing and using those devices and computer services, or causing them to be accessed and used, *inter alia* in connection with Defendant's sharing of information with third parties, and in some cases other users of Defendant's services who were able to access user data.

87.    Defendant violated §§ 502(c)(6) and (c)(13) of the CDAFA by knowingly and without permission providing and/or assisting in providing third parties a means of accessing Plaintiff's and Class members' computers and mobile devices.

88.    Under California Penal Code § 502(b)(12) a "[c]omputer contaminant" is defined as "any set of computer instructions that are designed to ... record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information."

89.    Defendant violated California Penal Code § 502(c)(8) by knowingly and without permission introducing a computer contaminant into the transactions between Plaintiff and the Class Members and websites; including but not limited to the code that intercepted Plaintiff's and the Class Members' private and personal data and transmitted that data to third parties.

90.    As a direct and proximate result of Defendant's unlawful conduct within the meaning of California Penal Code § 502, Defendant caused loss to

Plaintiff and the Class Members in an amount to be proven at trial, including that Plaintiff and the Class Members were injured by the loss of value of their personal information. Plaintiff and the Class Members are also entitled to recover their reasonable attorneys' fees under California Penal Code § 502(e)(2).

91.    Plaintiff and the Class Members seek compensatory damages in accordance with California Penal Code § 502(e)(1), in an amount to be proven at trial, and injunctive or other equitable relief.

92.    Plaintiff and Class Members have suffered irreparable and incalculable harm and injuries from Defendant's violations. The harm will continue unless Defendant is enjoined from further violations of this section. Plaintiff and Class Members have no adequate remedy at law.

93.    Plaintiff and the Class Members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violations were willful and, upon information and belief, Defendant is guilty of oppression, fraud, or malice as defined in Cal. Civil Code § 3294.

94.    Plaintiff and the Class Members have also suffered irreparable injury from these unauthorized acts of disclosure: their personal, private, and sensitive communications have been harvested, viewed, accessed, stored, and used by Defendant, and have not been destroyed, and due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiff and the Class to injunctive relief.

## COUNT III
### Negligence

95.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

96.    Defendant owed a duty to Plaintiff and Class members arising

from the sensitivity of Plaintiff's and Class members' information.  LoanDepot assumed a duty to provide its services in a secure and encrypted environment and one free from breaches and attacks by cyber criminals.  LoanDepot owed a duty to Plaintiff and the other Class members to exercise reasonable care in (a) using their PII in compliance with all applicable law and the terms of loanDepot's privacy policy; (b) safeguarding their PII in its possession; and (c) ensuring security in loanDepot's mortgage and financial services.

97.    To fulfill this duty, loanDepot was obligated to implement and maintain adequate security measures to protect its users' personal information and to avoid disclosure of its users' personal information to any third parties without their knowledge and consent.

98.    Defendant's duties included, among other things, the duty to design, maintain, implement, monitor, test, and comply with reliable security systems, protocols, and practices to ensure that Plaintiff's and Class members' financial transactions and PII were adequately secured from unauthorized access, and the duty to maintain the confidentiality of its users' private and personal information, including by refraining from sharing such information with unauthorized parties without users' informed and clear consent.

99.    Defendant breached its duties by, among other things, (1) failing to implement and maintain reasonable security protections and protocols, including by implementing end-to-end encryption, in accordance with its representations, and sufficient security protocols to prevent cyberattacks and ransomware; (2) knowingly sharing and/or selling customers' personal data to third parties for analytics and marketing purposes without adequate disclosure to and consent from its customers; and (3) failing to warn users of the risk of cyberattacks and data breaches.

100.    Plaintiff and the Class members used loanDepot's services in

reliance on its exercise of due care and fulfillment of its duties.

101.  LoanDepot, however, breached its duties by, among other things:

(a) disclosing Plaintiff's and other Class members' personal information to unauthorized third parties;

(b) allowing third parties to access the personal information of Plaintiff and other Class members;

(c) failing to implement and maintain adequate security measures to safeguard users' personal information;

(d) failing to timely notify Plaintiff and other Class members of the unlawful disclosure of their personal information; and

(e) failing to maintain adequate security and proper encryption in loanDepot's websites, customer portals, and other computer systems.

102.  LoanDepot's misconduct is inconsistent with industry regulations and standards.

103.  Plaintiff and other Class members did not contribute to loanDepot's misconduct.

104.  The harm inflicted upon Plaintiff and other Class members was reasonably foreseeable to loanDepot and was proximately caused by loanDepot's negligence.

105.  As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT IV
### Negligence *Per Se*

106.  Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

107.  Pursuant to the FTC Act (15 U.S.C. § 45), loanDepot had a duty to

provide adequate data security practices in connection with safeguarding Plaintiff's and Class members' Personal Information.

108.   Pursuant to the FTC Act (15 U.S.C. § 45), loanDepot had a duty to provide adequate data security practices to safeguard Plaintiff's and Class members' Personal Information.

109.   Defendant breached its duties to Plaintiff and Class members under the FTC Act (15 U.S.C. § 45), the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801, *et seq.*), the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.* ("CCPA"), and Cal. Civ. Code §§ 1798.80, *et seq.*, among other statutes, by failing to provide fair, reasonable, or adequate data security in connection with the sale of lending products and services in order to safeguard Plaintiff's and Class members' Personal Information.

110.   Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

111.   But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class members, Plaintiff and Class members would not have been injured.

112.   The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known that it was failing to meet its duties, and that a breach would cause Plaintiff and Class members to experience the foreseeable harms associated with the exposure of their Personal Information.

113.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have been harmed and face an imminent and ongoing risk of harm.

114.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered injury and are entitled to damages

1  in an amount to be proven at trial.

2               **<u>COUNT V</u>**
3            **Breach of Contract**

4        115.  Plaintiff realleges and incorporates all previous allegations as
5  though fully set forth herein.

6        116.  Plaintiff and Class members entered into contracts with loanDepot
7  with respect to the origination and servicing of mortgages and other real estate
8  and financial products.

9        117.  LoanDepot's Privacy Policy is a part of such contracts.

10       118.  LoanDepot's Privacy Policy stated that "We have adopted the
11 following policies and procedures to safeguard the personal information about
12 you in our possession."  The specific protections that loanDepot represented to
13 Plaintiff that it had adopted and implemented, and that it agreed to utilize as
14 part of providing services to Plaintiff, included its representation that:

15       "We have implemented **physical, electronic, and procedural**
16       **safeguards to maintain confidentiality and integrity of the**
17       **personal information in our possession and to guard against**
18       **unauthorized access**. These include among other things,
19       **procedures for controlling access to your files, building security**
20       **programs and information technology security measures such as**
21       **the use of passwords, firewalls, virus prevention and use**
22       **detection software**."

23       119.  Plaintiff and Class members performed all their obligations under
24 the contracts.

25       120.  LoanDepot breached its obligations under the contracts, including
26 by failing to provide adequate privacy, security, and confidentiality safeguards
27 for Plaintiff and Class members' PII.

28       121.  As a direct and proximate result of Defendant's breach of contract,

Plaintiff and Class members did not receive the full benefit of the bargain, and instead received mortgage and other financial services that were less valuable than described in the contracts and which subjected Plaintiff and the Class to a significant risk of a cyberattack and data breach.

122.    Plaintiff and Class members have suffered actual damages resulting from the exposure of their PII, and they remain at imminent risk of suffering additional damages in the future.  Accordingly, Plaintiff and Class members are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT VI
### Breach of Implied Contract

123.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

124.    LoanDepot provided or provides mortgage and non-mortgage lending services to Plaintiff and Class members, or Plaintiff and Class members provided their Personal Information to loanDepot as prospective customers or in some other capacity.

125.    In connection with their business relationship, Plaintiff and Class members entered into implied contracts with loanDepot.

126.    Pursuant to these implied contracts, Plaintiff and Class members provided loanDepot with their Personal Information. In exchange, loanDepot agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' Personal Information; and (2) to protect Plaintiff's and Class members' Personal Information in compliance with federal and state laws and regulations and industry standards.

127.    The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and

loanDepot, on the other hand. Had Plaintiff and Class members known that loanDepot would not adequately protect its customers' Personal Information they would not have done business with loanDepot.

128.    Plaintiff and Class members performed their obligations under the implied contract when they provided loanDepot with their Personal Information.

129.    Necessarily implicit in the agreements between Plaintiff/Class members and loanDepot was loanDepot's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class members' Personal Information.

130.    LoanDepot breached its obligations under its implied contracts with Plaintiff and Class members by failing to implement and maintain reasonable security measures to protect their Personal Information.

131.    LoanDepot's breach of its obligations of its implied contracts with Plaintiff and Class members directly resulted in the Data Breach.

132.    The damages sustained by Plaintiff and Class members as described above were the direct and proximate result of loanDepot's material breaches of its agreements.

133.    Plaintiff and other Class members were damaged by loanDepot's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the

effects of the breach, including the increased risks of identity theft they face and will continue to face.

## <u>COUNT VII</u>

### Breach of Implied Covenant of Good Faith and Fair Dealing

134.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

135.   There is a covenant of good faith and fair dealing implied in every implied contract. This implied covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. To fulfill its covenant, a party must give at least as much consideration to the interests of the other party as it gives to its own interests.

136.   Under the implied covenant of good faith and fair dealing, loanDepot is obligated to, at a minimum, (a) implement proper procedures to safeguard the personal information of Plaintiff and other Class members; (b) refrain from disclosing, without authorization or consent, the personal information of Plaintiff and other Class members to any third parties; (c) promptly and accurately notify Plaintiff and other Class members of any unauthorized disclosure of, access to, and use of their personal information; and (d) maintain adequate security and proper encryption in loanDepot's websites, customer portals, and services.

137.   LoanDepot breached the implied covenant of good faith and fair dealing by, among other things:

- disclosing Plaintiff's and other Class members' personal information to unauthorized third parties;
- allowing third parties to access the personal information of Plaintiff and other Class members;
- failing to implement and maintain adequate security measures to

safeguard users' personal information;

• failing to timely notify Plaintiff and other Class members of the unlawful disclosure of their personal information; and

• failing to maintain adequate security and proper encryption in Defendant's websites, customer portals, and services.

138.   As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have suffered actual losses and damages.

## COUNT VIII
## Breach of Fiduciary Duty

139.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

140.   Defendant owed and owes Plaintiff and the Class a fiduciary duty. A relationship exists between Plaintiff and Class members and Defendant in which Plaintiff and Class members put their trust in Defendant to protect the Personal Information of Plaintiff and Class members and Defendant accepted that trust.

141.   Defendant breached the fiduciary duties it owed/owes to Plaintiff and Class members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the Personal Information of Plaintiff and Class members.

142.   Defendant's breach of fiduciary duty was a proximate cause of damage to Plaintiff and Class members.

143.   But for Defendant's breach of fiduciary duty, Plaintiff and Class members would not have suffered injury and damage.

///

///

///

## COUNT IX

### Violations of the California Customer Records Act
### CAL. CIV. CODE §§ 1798.80, *et seq.*

144.  Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

145.  The California Customer Records Act requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." CAL. CIV. CODE § 1798.81.5.

146.  LoanDepot is subject to the California Customer Records Act because it owns, maintains, and licenses personal information, within the meaning of Section 1798.81.5, about Plaintiff and the Class.

147.  LoanDepot violated Civil Code § 1798.81.5 by failing to adopt and utilize reasonable measures to protect Plaintiff's personal information.

148.  As a direct and proximate result of Defendant loanDepot's violations of Section 1798.81.5 of the California Civil Code, the Data Breach described above occurred.

149.  Plaintiff suffered damages and injury including, but not limited to, time and expenses related to monitoring his financial accounts for fraudulent activity, attorneys' fees and expenses in bringing suit to seek redress against Defendant, an increased, imminent risk of fraud and identity theft, and loss of value of his personally identifying information.

150.  Plaintiff seeks relief under section 1798.84 of the California Civil Code including, but not limited to, actual damages, to be proven at trial, and injunctive relief.

## COUNT X

### Violations of the California Unfair Competition Law
### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

151. Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

152. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

153. Defendant engaged in unfair, fraudulent, and unlawful business practices in connection with its provision of services to Plaintiff and the Class, in violation of the UCL.

154. As alleged herein, Defendant expressly represented to consumers such as Plaintiff and Class members, among other things: that loanDepot had a strong Privacy Policy, that it took extensive and concerted efforts to safeguard Plaintiff's sensitive financial and personal information, that Plaintiff's transactions with loanDepot were secure, including by use of end-to-end encryption; and that Defendant would maintain adequate security practices and procedures to protect Plaintiff's and Class members' private information from unauthorized access. Defendant also omitted or concealed the material fact that its privacy and security measures were inadequate, and thus failed to disclose to Plaintiff and Class members that it failed to meet legal and industry standards for the protection of its customers' private property and information. Defendant also concealed its commercial tracking and sharing of customers' personal data with third parties.

155. The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

156. Defendant violated the "unlawful" prong of the UCL by violating, *inter alia*, Plaintiff's and Class members' constitutional rights to privacy, state

and federal privacy statutes, and state consumer protection statutes, such as the CCPA, CCRA, and FTC Act as alleged herein.

157.   Defendant loanDepot violated the unlawful prong of the UCL by failing to honor the terms of its implied contracts with Plaintiff and Class members in California, as alleged herein.

158.   Defendant loanDepot violated the unlawful prong of the UCL by failing to honor the terms of its implied contracts with Plaintiff and Class members in California, as alleged herein. Defendant's conduct also undermines California public policy — as reflected in statutes like the California Information Practices Act, Cal. Civ. Code §§ 1798, *et seq*., the CCPA concerning consumer privacy, and the CCRA concerning customer records — which seek to protect customer and consumer data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

159.   Defendant's acts, omissions, and conduct also violate the unfair prong of the UCL because Defendant's acts, omissions, and conduct also offended public policy (including federal privacy statutes, and state consumer protection statutes, such as CalOPPA, CDAFA, and HIPAA) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class members.

160.   The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendant's legitimate business interests, other than Defendant's conduct described herein.

161.   By exposing, compromising, and willfully sharing and/or selling Plaintiff's and Class members' private property and personal information without authorization, Defendant engaged in a fraudulent business practice

that is likely to deceive a reasonable consumer. Defendant's failure to utilize, and to disclose that they do not utilize, industry standard security practices, constitutes an unfair business practice under the UCL. Defendant's conduct is unethical, unscrupulous, and substantially injurious to the Class. While Defendant's competitors have spent the time and money necessary to appropriately safeguard their products, service, and customer information, Defendant has not—to the detriment of its customers and to competition.

162.    A reasonable person would not have agreed to purchase and/or use loanDepot's mortgage and financial services had he or she known the truth about Defendant's practices alleged herein. By withholding material information about its practices, Defendant was able to convince customers to use its services and to entrust their highly personal information to Defendant. Accordingly, Defendant's conduct also was "fraudulent" within the meaning of the UCL.

163.    As a result of Defendant's violations of the UCL, Plaintiff and Class members are entitled to injunctive relief.

164.    As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, including but not limited to payments to Defendant and/or other valuable consideration, *e.g.* access to their private and personal data. The unauthorized access to Plaintiff's and Class members' private and personal data also has diminished the value of that information.

165.    LoanDepot's conduct also violated the "fraudulent" prong of the UCL.  By failing to disclose that it does not enlist industry standard security practices, all of which rendered Class members vulnerable to data breaches, Defendant loanDepot engaged in UCL-violative practices.

166.    A reasonable consumer would not have utilized loanDepot's

mortgage and financial services had they known the truth about its deficient security procedures. By concealing material information about its security practices, loanDepot was able to obtain customers who provided and entrusted their Personal Information in connection with transacting business with loanDepot.

167.   As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, as detailed herein.

168.   In the alternative to those claims seeking remedies at law, Plaintiff and the Class allege that there is no plain, adequate, and complete remedy that exists at law to address Defendant's unlawful, unfair, and fraudulent practices. Therefore, Plaintiff and members of the proposed Class are entitled to equitable relief to restore Plaintiff and Class members to the position they would have been in had Defendant not engaged in unfair competition, including an order enjoining Defendant's wrongful conduct, restitution, and disgorgement of all profits paid to Defendant as a result of its unfair, deceptive, and fraudulent practices.

## <u>COUNT XI</u>
### Invasion of Privacy Violation of California Common Law and the California Constitution, Art. 1, § 1

169.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

170.   Plaintiff and Class members have a legally protected privacy interest in their private and personal information that is transferred to or utilized by loanDepot, and are entitled to the protection of their property and information against unauthorized access.

171.   Plaintiff and Class members reasonably expected that their personal data would be protected and secure from unauthorized parties, and

that their private and personal information would not be disclosed to any unauthorized parties or disclosed for any improper purpose.

172.   Defendant unlawfully invaded the privacy rights of Plaintiff and Class members by failing to keep Plaintiff's and Class members' PII safe, knowingly employing inadequate data privacy policies and protocols, and disclosing PII.  By doing so, Defendant unlawfully invaded Plaintiff's and Class members' privacy by, *inter alia*: (a) intruding into Plaintiff's and Class members' private affairs in a manner that would be highly offensive to a reasonable person; (b) invading Plaintiff's and Class members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party; (c) failing to adequately secure PII from disclosure to unauthorized persons; and (d) enabling the disclosure of Plaintiff's and Class members' Personal Information without consent.

173.   In failing to adequately secure Plaintiff's and Class members' personal information, Defendant acted in reckless disregard of their privacy rights. Defendant knew or should have known that its substandard security measures would cause its users harm and would be considered highly offensive to a reasonable person in the same position as Plaintiff and Class members.

174.   Defendant violated Plaintiff's and Class members' right to privacy under California law, including, but not limited to California common law and Article 1, Section 1 of the California Constitution and the California Consumer Privacy Act.

175.   As a direct and proximate result of Defendant's unlawful invasions of privacy, Plaintiff's and Class members' private, personal, and confidential information has been accessed or is at imminent risk of being accessed, and

their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiff and proposed Class members have suffered injuries as a result of Defendant's unlawful invasions of privacy and are entitled to appropriate relief.

176.   Plaintiff and Class members are entitled to injunctive relief as well as actual and punitive damages.

## COUNT XII
### Unjust Enrichment

177.   Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

178.   LoanDepot received Personal Information, money, and fees from Plaintiff and Class members, from which it has profited and benefited.

179.   LoanDepot has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class members did not receive services of the quality, nature, fitness, or value represented by loanDepot and that reasonable consumers expected.

180.   LoanDepot has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class members.

181.   Equity and justice militate against permitting loanDepot to retain these profits and benefits.

182.   Plaintiff and Class members suffered injury as a direct and proximate result of loanDepot's unjust enrichment and seek an order directing loanDepot to disgorge these benefits and pay restitution to Plaintiff and Class members.

## Count XIII
### Declaratory and Injunctive Relief

183.   Plaintiff repeats and re-alleges the allegations contained in every

preceding paragraph as if fully set forth herein.

184.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those alleged herein, which are tortious, and which violate the terms of the federal and state statutes described above.

185.   An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to safeguarding the data of Plaintiff and the Class. Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of additional fraud against them or on their accounts.

186.   Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed, and continues to owe a legal duty to secure the sensitive personal information with which it is entrusted, specifically including information obtained from its customers, and to notify impacted individuals of the Data Breach under the common law, Section 5 of the FTC Act;

b. Defendant breached, and continues to breach, its legal duty by failing to employ reasonable measures to secure its customers' personal information; and,

c. Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

187. The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its users' Personal Information.

188. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages, while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable, do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable and exceeds the hardship to Defendant if an injunction is issued.

189. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## **Count XIV**

### **Deceit by Concealment, CAL. CIV. CODE § 1710(3)**

190. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

191. As detailed above, loanDepot failed to disclose and actively concealed information about flaws that undermined the security and privacy of loanDepot's customer portal, website, and other systems, including with respect to encryption levels. As loanDepot knew, its knowledge was exclusive

to the Company and was not generally known to the public or to Plaintiff and other loanDepot users, and loanDepot had a duty to disclose those facts to Plaintiff and Class members.

192.   LoanDepot knew that the privacy and security of its services was materially worse than it represented and what Plaintiff and Class members reasonably expected, and intentionally concealed or suppressed those facts with intent to defraud Plaintiff and Class members.    LoanDepot had experienced other material problems with its data security, including a cyberattack in 2022 that allowed bad actors and cyber criminals to access the social security numbers of its customers, and yet loanDepot failed to timely disclose that data breach for nine months and failed thereafter to adequately improve the security of its websites, servers, and data systems.    Instead, loanDepot represented the opposite to its customers – that its systems were secure and that it maintained cutting-edge, industry-standard data encryption and security.

193.   The information loanDepot concealed was material in that it was important to reasonable persons, and Plaintiff and Class members would not have acted as they did if they had known of the concealed or suppressed fact. As a result, Plaintiff and Class members who purchased loanDepot mortgages and other financial products would not otherwise have purchased such services and products.    Furthermore, had Plaintiff known of the inadequate privacy and security of loanDepot's systems, Plaintiff and the Class would have taken steps to protect themselves and/or their personal information.

194.   Plaintiff seeks an award of all available damages, including compensatory and punitive damages.

/ / /

/ / /

## Count XV

### Violations of California Consumers Legal Remedies Act
### CAL. CIV. CODE § 1750, *et seq.*

195.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

196.   This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq*. This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief. Plaintiff will amend this Complaint later to seek damages in accordance with the CLRA after providing Defendant with notice as required by California Civil Code § 1782.

197.   Plaintiff and Class Members are "consumer[s]," as the term is defined by California Civil Code § 1761(d).

198.   Plaintiff, Class members, and loanDepot have engaged in "transaction[s]," as that term is defined by California Civil Code § 1761(e).

199.   Defendant loanDepot's acts and omissions, as alleged herein, constitute unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

200.   LoanDepot undertook its conduct in a manner that it knew was likely to deceive consumers.

201.   LoanDepot violated the CLRA by "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  CAL. CIV. CODE § 1770(a)(5). LoanDepot did so, as alleged herein, by representing that its systems were secure and that it maintained cutting-edge, industry-standard data encryption and security. It also represented through its Privacy Policy that it had adopted and implemented appropriate measures to protect Plaintiff's and the Class members' Personal Information.

202.   Defendant loanDepot also violated the CLRA by improperly handling, storing, and/or protecting either unencrypted or partially encrypted data.

203.   As a result of engaging in such conduct, Defendant has violated the CLRA.

204.   Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

205.   Plaintiff and the Class suffered injuries caused by Defendant's misrepresentations, because they provided their Personal Information to loanDepot believing that loanDepot would adequately protect this information.

206.   LoanDepot's unfair and deceptive acts and practices pose a threat of irreparable harm to Plaintiff and the Class.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

B.    Award declaratory and injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

C.    Award compensatory, statutory, and punitive damages to Plaintiff and members of the Class to the maximum extent allowable under the law;

D.    Award Plaintiff and Class members pre-judgment and post-judgment interest;

E.     Award Plaintiff and Class members reasonable attorneys' fees, costs, and expenses; and

F.     Award Plaintiff and Class members such other relief as is just and reasonable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated:  February 1, 2024                    Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)


*s/ Francis A. Bottini, Jr.*
Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:     (858) 914-2002
Email:     fbottini@bottinilaw.com
            achang@bottinilaw.com

*Counsel for Plaintiff Eljon Lako*